824 P.2d 1078

STATE of New Mexico, ex rel. Hal
STRATTON, Attorney General,
Plaintiff–Appellee,

v.

ALTO LAND & CATTLE COMPANY,
et al., Defendants–Appellants.

No. 11333.

Court of Appeals of New Mexico.

Dec. 18, 1991.

Tom Udall, Atty. Gen. and Frank D.
Weissbarth, Asst. Atty. Gen., Santa Fe, for
plaintiff-appellee.

S. Thomas Overstreet, S. Thomas Over-
street, P.C., Alamogordo, for defendants-
appellants.

## OPINION

MINZNER, Judge.

Defendants Alto Land and Cattle Compa-
ny (Alto) and James Wimberly (Wimberly)

appeal the trial court's orders allowing the attorney general to file a complaint in intervention and, on the basis of that complaint, requiring them to comply with the provisions of the New Mexico Subdivision Act (Act).[1] We conclude there was substantial evidence to support the court's determination that both defendants engaged in conduct in violation of the Act. We also conclude that the attorney general was authorized to seek injunctive relief to compel compliance. However, in addressing the issues raised by defendants, we have become convinced that the order entered requires revision. We think the order entered compels compliance that is not yet proper under the statutory scheme of enforcement.[2] Therefore, we affirm in part and reverse in part and we remand with instructions to enter a revised order in accordance with this opinion.

BACKGROUND.

The land that is the subject of this appeal, the Traylor Ranch, was purchased from Herbert Lee Traylor in 1971 by a group of local investors, including defendant Wimberly, organized into the Lincoln County Real Estate Trust (trust). In 1974, the trust sold the Traylor Ranch to Alto. Wimberly had no interest in Alto at this time, although he later became a shareholder and president.

In 1974, there was in existence a map showing the Traylor Ranch and other contiguous property marked into forty-acre parcels. The Traylor Ranch purchase included sixteen forty-acre parcels. In 1975, Wimberly transferred an additional forty-acre tract to Alto, which sold it on the same day to James L. Wimberly Enterprises, Inc., which transferred its interest on the same date to Wayne Townley. This parcel appears to have been contiguous to the parcels that were part of the Traylor Ranch. In 1978 and 1979, Alto sold eight forty-acre tracts to different purchasers.

According to testimony at trial, potential buyers chose parcels to purchase from the map, and some parcels had been offered for sale through newspaper advertisements. In 1978 and 1979, Alto also sold eight five-acre parcels from one forty-acre tract. The five-acre parcels were advertised for sale and were marketed by Great Western Realty, a real estate company owned by Wimberly. Wimberly testified that some of the land was sold to purchasers by way of real estate contracts. Alto sold the seven remaining forty-acre parcels to Land Barons of Ruidoso in 1982.

In 1985, the Lincoln County attorney filed a complaint for injunctive relief and mandamus against defendants on behalf of the board of county commissioners. The complaint alleged that defendants had violated both the Act and county subdivision regulations. In 1987, the trial court granted the attorney general's motion to intervene, and in 1988 the county's complaint was dismissed with prejudice.

The complaint in intervention alleged inter alia that in 1967, prior to Alto's acquisition of the property, a predecessor-in-interest had divided the property for the purpose of sale or lease into seventeen tracts

---

**1.** The Act is presently codified at NMSA 1978, Sections 47–5–9, 47–6–1 to –25, –26, –27, and – 28. Enacted in 1973, it was amended in 1979 and again in 1981 following this court's decision in *State ex rel. Anaya v. Select Western Lands, Inc.*, 94 N.M. 555, 613 P.2d 425 (Ct.App.1979). *See generally* Note, *Definitional Loopholes Limit New Mexico Counties' Authority to Regulate Subdivisions*, 24 Nat. Resources J. 1083 (1984) [hereinafter "Note, *Definitional Loopholes* "]. The Act "governs subdivision activity outside municipal boundaries.... grants the counties the power to adopt county subdivision regulations, to approve county subdivision plats, and to enforce the provisions of the Act." *Id.*

**2.** As indicated in note 1, the legislature first granted counties the power to govern subdivision activities in 1973. *See* 1973 N.M. Laws, ch. 348. The Act was subsequently amended in 1979, *see* 1979 N.M. Laws, ch. 172, and again in 1981. *See* 1981 N.M. Laws, ch. 148. The thrust of the 1981 amendments was "an attempt to eliminate the statutory construction problems encountered in *Select Western.*" *See* Note, *Definitional Loopholes, supra* at 1091. The 1979 Act had redefined the term "subdivision" to require a division of land surface into five parcels within three years, *see* 1973 N.M. Laws, ch. 348, § 1; *see also* NMSA 1978, § 47–6–2(I) (Repl.Pamp. 1982). It also revised the provision containing the civil enforcement powers given certain public officials. *See* 1979 N.M.Laws, ch. 172, § 3; *cf.* NMSA 1978, § 47–6–26 (Repl.Pamp.1982) (indicating no change occurred in 1981).

of forty acres each, and that "[t]hese divisions were part of the creation by Ruidoso Land Sales, Inc. of a 1320–acre subdivision consisting of 33 tracts of 40 acres each." The complaint in intervention also alleged that when Alto acquired the property, Wimberly knew that the property had been illegally subdivided; from 1975 to 1982 Alto sold sixteen of the seventeen tracts; in 1978 and 1979 it sold the seventeenth tract in eight five-acre parcels; and in "resubdividing, offering for sale and selling" the seventeen tracts, Alto and Wimberly failed to comply with specific requirements of the Act, as well as the county subdivision regulations.

After a bench trial, the trial court concluded that defendants were in violation of both the Act and county subdivision regulations. The court entered an order in early 1989 requiring defendants to comply with the Act and the current county subdivision regulations with respect to all property previously sold or now held by them and to take certain specific steps in order to comply.

The order contains four paragraphs. The first paragraph directs defendants to comply "with each requirement" of the Act and current county subdivision regulations with respect to all property previously sold or now held by them and lists five specific requirements, including filing a plat approved by the board, filing a disclosure statement, "submitting, obtaining approval of, and constructing the subdivision in conformity with a terrain management plan, a surface drainage plan, a subsurface drainage plan, a water availability plan and a liquid waste management plan," and constructing roads on a schedule approved by the board. The second paragraph directs that the process be initiated within sixty days and provides that failure to comply will entitle the state to proceed under SCRA 1986, 1–070, to obtain a money judgment "and/or issuance of a writ of attachment against the property of [defendants] to cover the costs of performance by a person appointed by the court." The third paragraph provides that all current owners of property within the subdivision be given an opportunity to sign the proposed plat,

but that their failure to do so shall not prevent the board from acting. The fourth paragraph provides as follows: "Until such compliance has taken place, ALTO and WIMBERLY be enjoined from offering for sale, selling, or otherwise transferring any further interest in property held by them within the aforementioned Sections."

On appeal, defendants contend that the trial court erred in granting the motion to intervene on four grounds: (1) lack of a hearing; (2) insufficient basis for intervention under SCRA 1986, 1–024; (3) expiration of the limitations period provided in NMSA 1978, Section 37–1–4 (Repl.Pamp. 1990); and (4) after the dismissal of the county's first amended complaint with prejudice, that portion of the complaint in intervention addressing the alleged violation of county subdivision regulations should have been dismissed as previously decided. Defendants have also argued (5) that the current owners of the property are indispensable parties; (6) that the relevant county regulations are the regulations that were in force at the time of the sales; (7) that the court's order seeks to require the county commission to exercise its discretion, which is an inappropriate use of mandamus; (8) that the injunctive relief sought is moot, because defendants no longer own any of the land in question; (9) that no subdivision was created, and therefore the Act and the county regulations did not apply; (10) that the trial court failed to exercise independent judgment in adopting all of the findings and conclusions requested by the state; and (11) that the trial court erred in holding Wimberly accountable for Alto's acts.

We address the issues in two groups. The first group includes issues (9), (10), and (11). These issues are answered by determining that there is sufficient evidence to support the court's findings and conclusions that there had been a violation of the Act. The second group includes the remaining issues. These issues all concern the attorney general's authority to seek the relief granted. With one exception, we understand the parties to have agreed that the 1973 version of the Act applies, and

therefore we have cited to the 1973 session laws throughout most of the opinion.

SUFFICIENCY OF THE EVIDENCE.

■ The parties agree that Judge (later Justice) Walters' opinion in *State ex rel. Anaya v. Select Western Lands, Inc.*, 94 N.M. 555, 613 P.2d 425 (Ct.App.1979) contains the relevant test. Consequently, although the decision to adopt that test was not concurred in by two judges and thus was not a decision of this court, *see Casias v. Zia Co.*, 94 N.M. 723, 725, 616 P.2d 436, 438 (Ct.App.1980) (quoting NMSA 1978, § 34–5–11 (" 'Decisions of the court shall be in writing with the grounds stated, and the result shall be concurred in by at least two judges.' ")), we apply that test to the facts of this case. The threshold issue is whether a subdivision was created.

Based on the way the attorney general framed his complaint in intervention, we believe he may have intended to prove initially that a predecessor in interest created a type-four subdivision, *see* 1973 N.M. Laws, ch. 348, § 2(N) (a "subdivision containing twenty-five or more parcels, each of which is ten acres or more in size"), and that Alto and Wimberly could be compelled to comply with the Act and the county subdivision regulations because they sold land within that subdivision. *See id.* § 2(H) (" 'subdivider' means any person creating a subdivision, *or* any person engaged in the sale or lease of subdivided land" (emphasis added)); § 2(I). The first count of the complaint, however, also alleged that in making sales, Alto and Wimberly failed to comply with requirements applicable to type-three subdivisions. *See id.* § 2(M) (a "subdivision containing not less than five but not more than twenty-four parcels, any one of which is less than ten acres in size"). At trial, the attorney general appeared to rely solely on the evidence of sales by Alto between 1975 and 1982 and advised the court that a type-three subdivision was at issue. After the hearing, the trial court made no findings or conclusions as to the type of subdivision that had been created, when it was created, or by whom. The record indicates that none were requested. As a result, the precise basis of the trial court's conclusion that defendants had violated the Act is uncertain. *Cf. State ex rel. Anaya v. Select W. Lands, Inc.*, 94 N.M. at 557, 613 P.2d at 427 (trial court found a type-four subdivision had been created).

At oral argument, however, the state indicated that it was relying on its proof as sufficient to show a violation as a result of a type-three subdivision created by Alto and Wimberly. We therefore assume that the state was attempting to prove that the sixteen forty-acre parcels sold between 1975 and 1982 should be included with the eight five-acre parcels sold in 1978 and 1979 as part of a single subdivision.

The state contended at oral argument that the dispositive issue in determining whether a subdivision was created in this case is whether more than five lots were sold in accordance with a predetermined plan. *See* ch. 348, § 2(I) (" 'subdivision' means an area of land within New Mexico, the surface of which has been divided by a subdivider into five or more parcels for the purpose of sale or lease"). We agree.

Under *Select Western*, "[t]here must be proof that at some time prior to alienation, there *has been* a division of one parcel into five or more, and that the dividing *was done* so that the smaller parcels could be sold or leased." *Id.* at 558, 613 P.2d at 428 (emphasis in original). "The owner must manifest by some overt conduct a clear indication that division has already taken place before the parcels are offered for sale." *Id.* at 559, 613 P.2d at 429. In *Select Western*, Judge Walters concluded that there was no evidence that the owners of the 3400–acre tract known as Gene West Ranch had ever chosen to divide that tract and sell it in more than five parcels. Rather, the evidence showed only that from time to time a portion of the tract was sold. Under these circumstances, the land remaining in *Select Western*'s ownership after each sale fell within the statutory exception from the definition of a subdivision for "land retained by the subdivider after subdivision but which has not been divided for a subdivision[.]" 1973 N.M. Laws, ch. 348, § 2(I)(1).

Here, on the other hand, there was evidence of a predetermined plan to sell the land acquired in 1974 in more than five parcels. In fact, the trial court found that "[a]t the time of the conveyance [to Alto in 1974], WIMBERLY and ALTO procured a plat of the area showing the location of [sixteen forty-acre] tracts." This finding has not been challenged, and we accept it as true. *City of Roswell v. Reynolds*, 86 N.M. 249, 252, 522 P.2d 796, 799 (1974). In light of that finding, the evidence of subsequent sales in 1978 and 1979 was sufficient to support an inference of an intent to divide the tract acquired in 1974 into five or more parcels for the purpose of sale or lease. There was evidence that the lots were advertised by a company in which Wimberly had the controlling interest, and there was evidence that the lots had been identified with stakes as well as drawn on the map.

Defendants have summarized conflicting evidence on the issue of their intent to create a subdivision. For example, they note that one of the purchasers in 1978 specifically inquired whether the lot he purchased was within a subdivision and was told it was not; they also note that two of the witnesses for the state were licensed real estate brokers who had participated in selling the lots and who testified that no subdivision had been created.

We believe the evidence presented an issue of fact for the trial court, which resolved that issue against defendants. Because there was substantial evidence to support that decision, we will not disturb it. *See generally Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 89, 428 P.2d 625, 628 (1967) (fact that there may have been contrary evidence that would have supported different verdict does not permit reviewing court to weigh evidence).

Wimberly also has argued that the trial court erred in finding him individually liable on these facts. We disagree. The trial court found that Wimberly sold an additional forty-acre tract to Alto in 1975 and that each of the forty-acre tracts sold was "divided and designated in advance of sale." The trial court also found that Wimberly was the sole shareholder of Great Western Realty and that he "directed and controlled [it] for the purpose of brokering the sale of parcels of land in the area encompassed by the State's complaint." There was substantial evidence to support these findings. Thus, whether the trial court intended to hold that Wimberly and Alto had created a subdivision or sold property within one, *see* 1973 N.M. Laws, ch. 348, § 2(H), the court's findings are sufficient to support a conclusion that both defendants engaged in conduct in violation of the Act.

Finally, we are not persuaded that the findings and conclusions entered reflect a lack of independent judgment. The relevant findings are supported by the evidence the record contains. *United Nuclear Corp. v. General Atomic Co.*, 93 N.M. 105, 122, 597 P.2d 290, 307 (1979). We note, further, that the copy of the findings tendered by the state contains handwritten additions and changes evidently made by the trial court and that each finding and conclusion is separately marked "Given." Thus, there is no evidence that the fact finder failed to exercise independent judgment and no reason to remand. *Cf. Nunez v. Smith's Management Corp.*, 108 N.M. 186, 188, 769 P.2d 99, 101 (Ct.App.1988) (hearing officer's verbatim adoption of findings and conclusions proposed by prevailing employer did not require remand where hearing officer made four findings not proposed by employer and there was substantial support in the record for the findings worker specifically challenged). Under these circumstances, no reversible error has been shown. We next address the propriety of the order entered on the findings and conclusions made.

PROPRIETY OF THE ORDER ENTERED.

1973 New Mexico Laws, chapter 348, Section 26 (the original version of Section 26) contains the civil enforcement powers initially given to state and local officials. The original version of Section 26 reads as follows:

Section 26. INJUNCTIVE RELIEF— MANDAMUS.—The board of county

commissioners, the district attorney or the attorney general may apply to the district court to have a subdivider enjoined from selling or leasing land within the affected subdivision until he complies with the terms of this act. In addition, the district attorney or the attorney general may bring mandamus to compel compliance with the provisions of this act. However, nothing in this section shall be construed as limiting any common law right of any person in any court relating to subdivisions.

The first sentence of the original version of Section 26 allowed the board of county commissioners, the district attorney, or the attorney general to apply to the district court to have a subdivider enjoined from selling or leasing land within the affected subdivision until the subdivider has complied with the Act. In addition, the second sentence of the original version of Section 26 allowed the district attorney or the attorney general to seek mandamus to compel compliance with the Act.

In 1979, the legislature revised the second sentence of the original version of Section 26. The revision authorized the board to bring mandamus to compel compliance. The revision also authorized the attorney general, the board, and the district attorney to seek injunctive relief to compel compliance. *Cf. State v. Heck,* 112 N.M. 513, 817 P.2d 247 (Ct.App.1991) (decided under current version of Act; the state sought injunctive relief against further sales until defendants obtained subdivision approval).[3]

In determining the propriety of the order entered, the threshold issue on appeal is the meaning of the term "mandamus" in the second sentence of the original version of Section 26. At oral argument, the state asked this court to consider affirming the trial court's order on an alternative ground in the event that we were not prepared to construe the term "mandamus" as it had argued we should do. The state argued, in the alternative, that when the legislature amended the original version of Section 26 in 1979, it authorized the kind of relief the trial court ordered and that because the change involved a change in remedy rather than a change in substantive rights, duties, and obligations, the later version of Section 26 can be applied in this case, or retrospectively. *See Hale v. Basin Motor Co.,* 110 N.M. 314, 319, 795 P.2d 1006, 1011 (1990) ("Remedial statutes are applied retroactively"). We first address the scope of the term "mandamus" under the original version of Section 26.

### A. The Scope of Mandamus Under the Original Version of Section 26.

▮▮▮▮ In construing the term "mandamus," we try to give effect to the intent of the legislature. *Orcutt v. S & L Paint Contractors, Ltd.,* 109 N.M. 796, 798, 791 P.2d 71, 73 (Ct.App.1990). In that effort, we look primarily to the language used in the statute. *Id.* We give the words used in the statute their ordinary meaning unless the legislature indicates a different intent and construe the statute in light of the purpose for which it was enacted. *State v. Rodriguez,* 101 N.M. 192, 194, 679 P.2d 1290, 1292 (Ct.App.1984).

Mandamus is a remedy that developed historically as a means to compel a specific kind of behavior, i.e., "compliance with a ministerial duty of an office." D. Dobbs, *Handbook on the Law of Remedies* § 2.10, at 112 (1973). In New Mexico, mandamus has typically been used as it historically evolved. In this jurisdiction, our supreme court has said that mandamus is the proper remedy where a public official refuses or delays to act and that a court will compel action in response to an action seeking a

---

3. Section 47–6–26 reads as follows:

**47–6–26. Injunctive relief; mandamus.**

The board of county commissioners, the district attorney or the attorney general may apply to the district court to have a subdivider enjoined from selling or leasing land within the affected subdivision until he complies with the terms of Sections 47–5–9 and 47–6–1 through 47–6–28 NMSA 1978. In addition, the board of county commissioners, the district attorney or the attorney general may seek injunctive relief or bring mandamus to compel compliance with the provisions of this act. However, nothing in this section shall be construed as limiting any common-law right of any person in any court relating to subdivisions.

writ of mandamus if the law requires the official to act in a certain way. *See Lovato v. City of Albuquerque,* 106 N.M. 287, 289, 742 P.2d 499, 501 (1987); *see generally* Dumars & Browde, *Mandamus in New Mexico,* 4 N.M.L.Rev. 155 (1974) (providing an overview of the New Mexico statute). This view of mandamus is consistent with its use in other jurisdictions. *See, e.g., Mobile Community Action v. Hanke,* 411 So.2d 783 (Ala.1982); *Beccia v. City of Waterbury,* 185 Conn. 445, 441 A.2d 131 (1981); *County of Allegheny v. Commonwealth,* 507 Pa. 360, 490 A.2d 402 (1985); *Martin v. Hatfield,* 251 Ga. 638, 308 S.E.2d 833 (1983); *Hill v. Butler,* 107 Ill.App.3d 721, 63 Ill.Dec. 385, 437 N.E.2d 1307 (1982).

■ Typically, then, a party brings an action of mandamus to compel performance of a public duty by a public official, *Martin v. Hatfield,* or a public or quasi-public duty owed by an individual. *Carroll v. American Agricultural Chem. Co.,* 175 Ga. 855, 167 S.E. 597 (1932). *Cf. Mobile Community Action v. Hanke* (nonprofit corporation operated as an anti-poverty organization and funded by federal government could be required by writ of mandamus to seat representatives of public sector designated by county commissioners to serve on board of directors as required under bylaws). The notion of a quasi-public duty may be a broad one. For example, *Parks v. Board of County Commissioners,* 11 Or.App. 177, 501 P.2d 85 (1972), held that mandamus would lie against a builder who had constructed buildings in violation of a zoning ordinance and who had intervened in a mandamus proceeding brought initially against a board of county commissioners. However, a writ of mandamus is available only to one who has a clear legal right to the performance sought; it is available only in limited circumstances to achieve limited purposes. *Beccia v. City of Waterbury; see also County of Allegheny v. Commonwealth; Hill v. Butler; cf. Parks v. Board of County Comm'rs* (court held that a statute authorizing the use of mandamus to remove an unlawfully constructed building meant at least that the person responsible for constructing the buildings had a duty to remove them).

We recognize that there are New Mexico statutes authorizing the use of mandamus in circumstances that would appear to be applicable only to private individuals. *See* NMSA 1978, §§ 59A-2-11(A) & 59A-3-7(B) (Repl.Pamp.1988) (insurance code); NMSA 1978, § 60-13-53 (Repl.Pamp.1989) (reconstruction licenses); NMSA 1978, § 60-14-18 (Repl.Pamp.1989) (manufactured housing). Moreover, in *Gabaldon v. Sanchez,* 92 N.M. 224, 226, 585 P.2d 1105, 1107 (Ct. App.1978), this court stated in dictum that a subdivider "should be compelled to comply with the [New Mexico Subdivision] Act. This result can be obtained if plaintiffs will convince either the district attorney of Valencia County or the attorney general to proceed for injunctive relief or mandamus." This language suggests the court assumed that mandamus would lie against a private subdivider.

We note, however, that Section 26 uses restricted language. The four statutes cited above as apparently permitting mandamus against the regulated party all use rather expansive language such as "mandamus or any other appropriate process," *see* §§ 59A-2-11(A) & 59A-3-7(B), or "mandamus or any proper legal proceeding," *see* §§ 60-13-53 & 60-14-18. Further, in the original version of Section 26, the legislature was quite specific about the injunctive relief that was authorized against "a subdivider." After specifying who was subject to such relief ("a subdivider"), Section 26 specifies what he or she may be enjoined from doing ("selling or leasing land within the affected subdivision"), and for how long he or she can be so enjoined ("until he complies with the terms of this act").

■ We conclude that the legislature's intent in authorizing mandamus under the original version of Section 26 is unclear. We assume but need not decide that, when the legislature enacted the original version of Section 26, it used mandamus in its usual meaning as a remedy available against public and some quasi-public officials and limited the use of injunctive relief to that provided in the first sentence. *Cf.*

*Parks v. Board of County Comm'rs* (statute authorized use of mandamus to prevent, abate, or remove the unlawful construction). We agree with the state's alternative argument that Section 47–6–26 should be applied retrospectively.

### B. The Applicability of Section 47–6–26.

■ In *Hale*, the supreme court stated that "[s]ubstantive duties, rights, and obligations arise under and are determined by the law in effect at the time of the conduct in question," *Id.*, 110 N.M. at 319, 795 P.2d at 1011, but noted that "[s]ubstantive rights are to be distinguished from procedural or remedial rights that prescribe methods of obtaining redress or enforcement of substantive rights." *Id.*

The revision in 1979 is indistinguishable from the remedial provision applied retrospectively in *Hale.* In *Hale*, those who had been given a private cause of action under the Unfair Trade Practices Act had been given the additional right to collect treble damages. The party liable for treble damages had been liable under prior law for actual damages, and there was no change in the nature of the underlying liability. Here, also, the statutory revision authorized the use of a mandatory injunction against a party that was previously subject to liability for conduct contrary to the Act. Although the revision in enforcement powers occurred in conjunction with a redefinition of the term "subdivision," *see generally* 1973 N.M. Laws, ch. 348, § 2(I); NMSA 1978, § 47–6–2(I) (Repl.Pamp.1982) (the term "subdivision" was first defined to require division of land surface into five or more parcels and later defined to require a division into five or more parcels that occurred within a period of three years), for purposes of this appeal there was no significant change in the nature of a developer's liability.

We conclude that Section 47–6–26 should be applied retrospectively. As indicated below, however, we also conclude that the order entered contained provisions that were not appropriate under Section 47–6–26, so that the order must be revised on remand.

### C. Revisions in the Order Required on Remand.

■ The state argues in effect that the trial court ordered defendants to do those acts that would be required of them had they filed a plat and such an order is a proper mandatory injunction under the amended version of Section 26. *See* § 47–6–26. We have had some difficulty in determining whether that is an appropriate characterization of the order.

Under the Act, "[t]he requirements imposed upon the developer vary according to the type of subdivision. Higher standards are imposed where there is a potential of greater density and adverse impact on the environment." J. Bingaman, *Subdividing Land in New Mexico: A Guide for Subdividers, Land Use Administrators, Public Officials and Land Purchasers* at 68 (Nov. 1980) [hereinafter *Subdividing Land* (1980)]. Here, the subdivision that was created includes no more than twenty-four parcels, and the order compels performance the Act itself imposed only on a subdivider of a larger subdivision.

For example, the order requires disclosure, a requirement imposed by the Act on a subdivider of a type-one, type-two, or type-four subdivision. *See* 1973 N.M. Laws, ch. 348, § 17. All three types are defined as subdivisions containing twenty-five or more parcels. *See id.* §§ 2(K), (L), & (N).

Further, the order requires construction in conformity with certain plans such as a terrain management plan, a water availability plan, and a liquid waste management plan. Under the Act, however, these requirements are imposed only on the subdivider of a type-one or type-two subdivision. *See id.* § 11(A). A type-one subdivision is defined as a "subdivision containing five hundred or more parcels, any one of which is less than ten acres"; a type-two subdivision is a subdivision of "not less than twenty-five but not more than four hundred ninety-nine parcels, any one of which is less

than ten acres in size." *See id.* §§ 2(K), (L).

As the attorney general suggested at oral argument, perhaps the state requested such specificity in the order only to ensure that all relevant issues were addressed when defendants prepared the requisite plat for board consideration and never intended to insist that each issue be addressed in a particular way. Alternatively, the order may reflect dual purposes in intervening: (1) to represent the county, and (2) to exercise the attorney general's independent enforcement power. As the case progressed, however, the county's complaint was dismissed with prejudice. Further, the state has conceded that the board "may waive any or all of the requirements imposed under current subdivision regulations."

On balance, then, the attorney general appears to have sought and obtained an order on its own behalf that required defendants to do all that might be required of them by the board prior to approving any plat they submitted. On the record before us, we are not satisfied that we can characterize the order as a proper exercise of power under Section 47–6–26.

By way of comparison, in analyzing the enforcement powers currently available under the Act, the Office of the Attorney General has commented:

> The 1978 amendment inserted "Board of County Commissioners" and "seek injunctive relief" in the second sentence. If the Board has approved a schedule of compliance tendered by the subdivider for the construction of a water system, waste system or roads, and a subdivider has not complied with these requirements, the Board, the District Attorney or the Attorney General has authority to compel the subdivider to complete these facilities. Thus, the Board, the District Attorney or the Attorney General can not only enjoin further sales but can impose the affirmative duty upon the subdivider to construct the facilities promised by the subdivider in gaining approval of his plat. These enforcement powers appear to be limited to the Board, the District Attorney or the Attorney General and may not extend to private parties. The Board may also utilize the remedies in this section to compel a subdivider to provide it with the needed information to make its determination on whether to approve or disapprove a proposed subdivision.

*Subdividing Land* (1980), *supra*, at 110–11.

Under this interpretation of Section 47–6–26, the attorney general and the district attorney are authorized to seek injunctive relief to compel performance required by the board. In addition, the attorney general, the district attorney, and the board may compel performance promised by the subdivider in gaining approval of the plat.

We do not read the passage from the manual as an attempt by the attorney general to exhaustively set forth all powers provided by the Act. In listing some of the authority, the manual does not mean to suggest that other authority was not provided. Indeed, by stating that the Act provides certain powers, the manual implies that other powers are also provided. In particular, we do not see how one could read the Act as permitting the board "to compel a subdivider to provide it with the needed information to make its determination on whether to approve or disapprove a proposed subdivision," but not permitting the board or the attorney general to compel a subdivider to prepare a plat and submit it to the county for approval.

Nevertheless, we think the only requirements that the order should have imposed on these defendants at this point in time are those necessary to put the board in a position to consider and act upon a proposed plat. As Amy Landau has pointed out in her New Mexico Law Review note, under the Act:

> The primary responsibility for subdivision approval remains with the county. Unless the county commissioners have approved a plat, the sale or lease of land is illegal, improvements to the land may be prohibited, and building permits may be withheld. By requiring compliance with the Act and regulations prior to plat

approval, the county can condition development upon a subdivider's specific performance of construction requirements based on local needs and environmental factors. [Footnotes omitted.]

Note, *Definitional Loopholes Limit New Mexico Counties' Authority to Regulate Subdivisions*, 24 Nat. Resources J. 1083, 1086 (1984). Thus, the conduct the state might compel at this stage includes the preparation of a certified plat, its acknowledgement in accordance with the Act, and submission to the board for approval with information required by the board. *See* 1973 N.M. Laws, ch. 348, §§ 3, 4, 8(A) & 12(B). We note that the county clerk may not accept the plat for filing until it has been approved by the board. *See* 1973 N.M. Laws, ch. 348, § 6.

We also agree with defendants that the current county subdivision regulations are not the applicable regulations. The regulations that should be applied in this case regarding any particular parcel are the regulations in effect at the time that parcel was sold. That is because we view the injunctive relief authorized in Section 47–6–26 as intended to give a purchaser the benefit it would have been entitled to had the subdivider complied with the Act and the regulations in effect at the time of the sale. We do not understand the legislature to have intended to give the purchaser a windfall and to impose a penalty on the subdivider by granting the purchaser benefits and imposing requirements on the subdivider enacted after the sale.

For the foregoing reasons, we conclude the trial court's order granted relief that was not authorized. However, because we have determined that the trial court's determination that a violation of the Act occurred is supported by substantial evidence, we reverse the order entered but remand for entry of a revised order consistent with this opinion. We now address defendants' remaining issues.

### D. *Remaining Issues.*

With respect to the lack of a hearing on the motion to intervene, the record indicates that the trial court heard argument on the matter at trial. Defendants contend that they did not receive prior notice, but because they had raised the issue initially, we are not persuaded that the lack of notice substantially prejudiced them. Under these circumstances, we conclude any error was harmless. *See* SCRA 1986, 1–061.

Regarding the basis for intervention, Rule 1–024(B)(2) authorizes the trial court to permit intervention "when an applicant's claim * * * and the main action have a question of law or fact in common." Here, the state's complaint raised the same questions of fact and law under the Act that were raised in the county's complaint, and therefore the decision to permit intervention was within the court's discretion.

With respect to defendants' statute of limitations argument, we agree with the state that its complaint in intervention was not barred by the four-year statute of limitations provided in Section 37–1–4. *See generally Board of Educ., School Dist. 16 v. Standhardt*, 80 N.M. 543, 549, 458 P.2d 795, 801 (1969), which says:

It appears * * * to be the general rule that statutes of limitations do not run against the state unless the statute expressly includes the state or does so by clear implications, but will run against county and other political subdivisions, including school districts, unless such may be deemed to be an arm of the state because of the particular governmental functions or purposes involved.

Defendants have argued that "[t]he county of Lincoln's actions are barred by Section 37–1–4 * * * by virtue of" NMSA 1978, Section 37–1–19 (Repl.Pamp.1990), which says that limitations periods bar actions by bodies "corporate or politic" except when otherwise expressly declared, and that in this case the complaint in intervention is also barred, because the county "is the real party in interest in an action to enforce an 'alleged' violation of its county subdivision regulations." *See* SCRA 1986, 1–017(A) ("Every action shall be prosecuted in the name of the real party in interest").

We disagree with defendants' premise that there was only one "real party in interest" and need not address the argu-

ment that Section 37–1–4 barred the county's complaint. *Cf. Board of Educ., School Dist. 16 v. Standhardt* (in suit by board of education on obligation owed by supplier, board was real party in interest and as such was barred by four-year statute of limitations). We have concluded that Section 47–6–26 authorized the attorney general to seek injunctive relief to compel compliance with the Act. As a result, the state was a real party in interest. "A party authorized by statute to maintain an action is a real party in interest." 3A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 17.14, at 17–125 (1991). *See also* SCRA 1986, 1–017(A).

We also agree with the state that the court's dismissal with prejudice of the county's complaint did not affect the state's complaint in intervention. We are not certain that defendants raised this issue at trial other than in the context of their statute of limitations argument. On appeal they have argued in effect that in dismissing the county's complaint with prejudice, the court necessarily resolved the issues raised by the complaint in intervention. If this argument was not raised at trial, no error was preserved for appellate review. *See* SCRA 1986, 12–216(A). In any event, the county's complaint was dismissed because the attorney general intervened. Although the written order dismissing the county's complaint was filed in December 1988, the court granted the state's oral motion to dismiss the county's complaint as trial began. The record indicates that the court was asked to dismiss the county's complaint because the complaint in intervention raised the same issues. Under these circumstances, there is no basis for a conclusion that dismissal of the county's complaint resolved the issues on the merits.

Even if the state and the county could be identified in some sense as a single party, the district court manifested a clear intention on the record that the dismissal against the county did not bar the state's claim, *see Restatement (Second) of Judgments* § 20 cmt. i (1982), and implicitly reserved the state's right to maintain its action by proceeding to try the action. *Cf.*

*id.* § 26(1)(b) (when court in first action "has expressly reserved the plaintiff's right to maintain the second action," the general rule concerning splitting does not apply to extinguish the plaintiff's claim). In the context of this case, the dismissal by the county did not preempt the state's cause of action. *See id.* § 41 cmt. d; *cf. Adams v. United Steelworkers of America, AFL–CIO*, 97 N.M. 369, 372–74, 640 P.2d 475, 478–80 (1982) (stipulated dismissal with prejudice of workers' claim against employer for wrongful discharge has no collateral estoppel effect with respect to workers' claim against union for breach of duty to fairly represent him if worker did not have an opportunity to fully and fairly litigate the wrongful discharge claim against employer).

Defendants have also argued that the current owners of the property are indispensable parties. Defendants based this contention on the Act's requirement that every plat contain a statement "that the land being subdivided is subdivided in accordance with the desire of the owner of the land," that the plat be acknowledged "by the owner or his authorized agent," and that every plat submitted to the county be accompanied by an affidavit of "the owner or his authorized agent." *See* 1973 N.M. Laws, ch. 348, § 4. Defendants argue that the present owners must be joined because by statute they must participate in preparation of the plat. Here, however, the district court's order has the purpose of requiring to be done what should have been done prior to past sales. What should have been done is that Alto or Wimberly should have prepared a plat, together with the appropriate statement and acknowledgement, and submitted it to the board. *Id.* As we construe the appropriate scope of the order, we do not think the trial court erred in rejecting the argument that the present owners are indispensable parties. We conclude that this argument has no merit. *See C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.*, 112 N.M. 89, 91, 811 P.2d 899, 901 (1991) (court has discretion in applying a balancing test to determine whether the suit can continue without the party).

The evidence showed that the last parcels were sold in 1982. Defendants have argued that, under these circumstances, the attorney general's request for injunctive relief, under the fourth paragraph of the order, is moot. In *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citation omitted), the Supreme Court held that an action for injunctive relief is mooted only if (1) " 'there is no reasonable expectation * * *' that the alleged violation will recur * * *, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). Here there was evidence that some of the property had been sold on real estate contract, and therefore the likelihood of the property reverting to defendants is unclear. In addition, it is undisputed that defendants have made no attempt to comply with the Act. We conclude that, on the record before us, we cannot say the issue of injunctive relief under the first sentence of the original version of Section 26 is moot.

CONCLUSION.

The trial court's findings are supported by substantial evidence and justify its conclusions that defendants have violated the Act. The complaint in intervention appears to have been drafted in reliance on a power of enforcement that the original version of Section 26 does not contain. However, Section 47–6–26 is applicable retrospectively, and under that section the attorney general was authorized to seek injunctive relief to compel defendants' compliance with those provisions of the Act that will enable the board to act in approving or rejecting the plat defendants must prepare and submit. Certain portions of the first paragraph of the order are not appropriate subjects of injunctive relief at this time, because no plat has as yet been submitted, and the board has not yet acted. Therefore, the trial court's order is reversed, and the case is remanded with instructions to enter an amended order consistent with this opinion. No costs are awarded.

IT IS SO ORDERED.

BIVINS and HARTZ, JJ., concur.