884 P.2d 518

**STATE of New Mexico, ex rel. Tom UDALL, Attorney General, Plaintiff-in-Intervention-Appellee,**

v.

**James L. WIMBERLY, et al., Defendants–Appellants.**

**No. 15266.**

Court of Appeals of New Mexico.

Aug. 30, 1994.

Tom Udall, Atty. Gen., Roberta D. Joe, Asst. Atty. Gen., Santa Fe, for plaintiff-in-intervention appellee.

S. Thomas Overstreet, Overstreet & Lane, P.C., Alamogordo, for defendants-appellants.

## OPINION

MINZNER, Chief Judge.

Defendant James L. Wimberly appeals from a district court order holding him in contempt of court for refusing to comply with a prior judgment. Wimberly raises several issues on appeal: (1) whether the district court erred in finding him in contempt of court because he had done everything within his means to satisfy the judgment; (2) whether the district court's order holding him in contempt exceeded its jurisdiction because the court required him to satisfy the State to purge himself of contempt; and (3) whether the automatic stay applicable in bankruptcy proceedings filed by Alto Land & Cattle Co. (Alto) stayed the proceedings against Wimberly individually. There was substantial evidence that Wimberly was in willful noncompliance with the judgment; the district court did not exceed its jurisdiction; and the automatic stay filed by Alto did not stay the proceedings against Wimberly individually. Therefore, we affirm.

## BACKGROUND

In 1985, the Lincoln County Board of Commissioners (County) filed a complaint for injunctive relief and mandamus against Alto and Wimberly for violating the New Mexico

Subdivision Act (Act) and the county subdivision regulations. In 1987, the attorney general filed a motion to intervene as a plaintiff-in-intervention against Alto and Wimberly. The attorney general's motion to intervene was granted, and in 1988 the County's complaint was dismissed with prejudice. Following a bench trial, the district court concluded that Alto and Wimberly were in violation of both the Act and the county subdivision regulations. In 1989, the court ordered Alto and Wimberly to comply with the Act and the county subdivision regulations; the court also ordered them to take specific steps to commence compliance with respect to all property they had previously sold or now held.

On appeal, this Court affirmed in part, reversed in part, and remanded with instructions to enter an amended order. *See State ex rel. Stratton v. Alto Land & Cattle Co.*, 113 N.M. 276, 277, 824 P.2d 1078, 1079 (Ct. App.1991). We concluded that several specific requirements of the order were premature and that the order should impose only those requirements which are "necessary to put the board in a position to consider and act upon a proposed plat." *Id.* at 284, 824 P.2d at 1086. We noted that "[c]ertain portions of the first paragraph of the order are not appropriate subjects of injunctive relief at this time, because no plat has as yet been submitted, and the board has not yet acted." *Id.* at 287, 824 P.2d at 1089.

On April 21, 1993, the district court entered a judgment on the mandate which Alto and Wimberly appealed. This Court assigned the case to the summary calendar and proposed summary reversal in part and summary affirmance in part. In our second calendar notice, we proposed to rule that the district court could have compelled Alto and Wimberly to prepare a certified plat acknowledged in accordance with the Act and to submit it with the information the Board of County Commissioners required. We also proposed to hold that Alto and Wimberly were required to comply with the regulations in effect at the time the parcels were sold. Neither side responded to the second calendar notice, and the appeal was disposed of in a memorandum opinion noting that fact and relying on the reasoning of the two calendar notices. *See* SCRA 1986, 12–210(D) (Repl. 1992) (Effective August 1, 1992).

Following the second appeal, the district court again entered a judgment on the mandate from this Court. This order, entered in 1993, compelled Alto and Wimberly to prepare a certified plat in compliance with the state and county regulations in effect when each parcel was sold "to the extent that those laws relate to the submission of the plat." Alto and Wimberly were also ordered to have the plat acknowledged in accordance with the Act and submitted to the Lincoln County Commissioners for board approval no later than sixty days after the entry of judgment. The judgment further stated that failure to comply with its requirements would trigger SCRA 1986, 1–070 (Repl.1992), entitling the State to obtain an entry of a money judgment and/or issuance of a writ of attachment to cover the costs of performance by a person appointed by the court. The language of the judgment on mandate closely follows the language used by this Court in its calendar notices proposing summary disposition of the second appeal.

The Attorney General filed a motion for an order to show cause why Alto and Wimberly should not be held in contempt for failure to comply with the 1993 judgment on mandate, why writs of attachment should not issue against their property, and why judgment should not be entered against them. On September 13, 1993, Alto filed for bankruptcy in federal district court and filed a notice of automatic stay with the state district court on September 17. The state district court held a hearing on September 20 on the order to show cause. At that hearing, the State indicated it was not seeking relief against Alto, but only against Wimberly. The court found that Wimberly and Alto were separate parties, that the former was familiar with the terms of the 1993 judgment on mandate, and that he had "made no effort whatsoever to comply with [it]." At the close of the hearing the court orally held Wimberly in contempt of court. The court provided, however, that execution would not issue until October 20, 1993 "in order to enable James L. Wimberly to purge himself of contempt by complying with or making arrangements satisfactory to

the State and Lincoln County to comply with the terms of the Judgment on Mandate." On November 1 the court filed a written order holding Wimberly in contempt of court.

## DISCUSSION

Wimberly urges this Court to reverse the contempt charge because (a) he was not in willful noncompliance, and (b) he lacked the financial means to comply. Second, he argues that the district court exceeded its jurisdiction. Third, he argues that the automatic stay, of which Alto notified the court prior to the September 20 hearing, deprived the court of the authority to hold him in contempt. We address his jurisdictional argument first.

### 1. *Jurisdiction*

Wimberly contends that the district court exceeded its jurisdiction by ordering him to make arrangements satisfactory to the State and Lincoln County to purge himself of contempt. He argues that since this Court's memorandum opinion disposing of the second appeal required revisions in the prior judgment on mandate, the district court exceeded that mandate by referring to the State's satisfaction with the plat. In support, Wimberly cites cases holding that the district court has authority only over those matters remanded by the mandate. *E.g., Vinton Eppsco Inc. v. Showe Homes, Inc.,* 97 N.M. 225, 638 P.2d 1070 (1981). However, this Court, in reaching its initial decision to remand following the first appeal, noted that "the conduct the state might compel at this stage includes the preparation of a certified plat, its acknowledgement in accordance with the Act, and submission to the board for approval with information required by the board." *Alto Land & Cattle Co.,* 113 N.M. at 285, 824 P.2d at 1087. In remanding after the second appeal, we relied on similar language in the calendar notices. The 1993 judgment on the mandate scrupulously followed that language. The district court's order after the September 20, 1993 hearing is not inconsistent with either mandate. The district court did not exceed the mandate of this Court. *See Genuine Parts Co. v. Garcia,* 92 N.M. 57, 60, 582 P.2d 1270, 1273 (Ct.App.1978).

### 2. *Automatic Stay*

Wimberly argues that the automatic stay applicable to Alto's bankruptcy proceedings "would in effect apply to Wimberly because Wimberly would be in contempt of the bankruptcy court by taking control, possession or exercising control over the property that was before the bankruptcy proceeding. . . ." He asserts that as an individual he would be violating Section 362(a)(3) and (4) "by engaging in surveying, title work and in general exercising control over the property by filing a plat." *See* 11 U.S.C. § 362(a)(3), (4) (1988); *see also Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 586 (9th Cir.1993).

Section 362(a)(3) and (4) provide as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

.     .     .     .     .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate[.]

"A principal purpose of [Section 362(a)(3)] is to preserve property for use in the reorganization of the debtor and to prevent the dismemberment of the estate." *Hillis Motors, Inc.,* 997 F.2d at 586. Wimberly presented no evidence at the hearing in support of his claim that the actions the district court had ordered him to take would affect the bankruptcy court's control of Alto's property. Absent such evidence, we cannot be certain that the court order required Wimberly to create a lien against or otherwise exercise control over Alto's property. Under these circumstances, we think the State has the right to proceed to enforce its judgment against Wimberly individually.

The State has argued that the automatic stay "does not operate as a stay of the en-

forcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." *See* 11 U.S.C. § 362(b)(4), (5); *see also In re Timberon Water Co.*, 114 N.M. 154, 159, 836 P.2d 73, 78 (1992). We recognize there appears to be debate among federal courts regarding the applicability of the statutory provision on which the State relies. *Compare Cournoyer v. Town of Lincoln*, 790 F.2d 971, 975 (1st Cir.1986) (applying provision) *with Hillis Motors, Inc.*, 997 F.2d at 590–91 (refusing to apply provision) *and In re Goodwin*, 163 B.R. 825, 828 (Bankr.D.Idaho 1993) (same). That is, courts disagree as to whether Section 362(b)(4) and (5) provide an exception to Section 362(a)(3) or (4). *See In re Goodwin*, 163 B.R. at 828. We need not resolve that issue here, however.

The automatic stay statute does not control actions brought against non-debtor entities, even where there is a close nexus between those non-debtors and their bankruptcy affiliates. *In re Winer*, 158 B.R. 736, 743 (Bankr.N.D.Ill.1993). This includes situations where the non-debtor is a corporation wholly owned by the debtor. *Id.*

> [T]he protection of this stay is personal to the debtor and does not extend to those jointly liable with the debtor. As to actions against those entities, this stay is not effective. Also, it does not extend to separate legal entities such as corporate affiliates, partners in debtor partnerships, or to codefendants in pending litigation. [Footnote omitted.]

1 *Collier Bankruptcy Manual* ¶ 362.03, at 362–15 (Lawrence P. King, Editor-in-Chief, 3d ed. 1994). "It has been a cardinal principle of bankruptcy law from the beginning that its effects do not normally benefit those who have not themselves 'come into' the bankruptcy court with their liabilities *and* all their assets." *In re Venture Properties, Inc.*, 37 B.R. 175, 177 (Bankr.D.N.H.1984).

We conclude that Wimberly failed to show that the automatic stay provisions contained in Sections 362(a)(3) and (4) apply to the present proceeding. He has shown no other basis that would preclude the court's authority. "Courts will examine the sub-

stance of an action, and not its form, to determine whether the action is stayed under subsection (a)...." *In re Goodwin*, 163 B.R. at 827. The State has proceeded against Wimberly individually, and the stay relating to Alto therefore does not apply.

### 3. *Contempt*

The elements necessary for a finding of civil contempt are (1) knowledge of the court's order; (2) an ability to comply; and (3) willful noncompliance with the order. *Rhinehart v. Nowlin*, 111 N.M. 319, 326, 805 P.2d 88, 95 (Ct.App.1990); *Dial v. Dial*, 103 N.M. 133, 136, 703 P.2d 910, 913 (Ct.App. 1985). When reviewing a charge of civil contempt, the action of the trial court will not be disturbed absent an abuse of discretion. *Local 890 of Int'l Union of Mine, Mill & Smelter Workers v. New Jersey Zinc Co.*, 58 N.M. 416, 422, 272 P.2d 322, 326 (1954). The burden of proof in a civil contempt case is the preponderance of the evidence. *Greer v. Johnson*, 83 N.M. 334, 335, 491 P.2d 1145, 1146 (1971). "[T]he credibility of the witnesses and the weight to be given the evidence is for the trier of the facts." *Id.* at 336, 491 P.2d at 1147.

Wimberly challenges the district court's finding that he "made no effort whatsoever to comply with the Judgment on Mandate." Wimberly concedes that he had knowledge of the order, but he argues that he did everything within his means to comply with the judgment on mandate, and any failure to comply was a result of financial inability to do so rather than willful noncompliance. We first address his challenge to the court's finding.

The district court refused to admit into evidence any of Wimberly's actions to comply occurring prior to the issuance of the 1993 judgment on mandate. The actions Wimberly wished to have submitted into evidence included preparation of a list of property owners who would have to sign the plat, acquisition of estimates on the preparation and presentation of a certified plat and cost for road construction, and placement on the agenda of the Planning and Zoning Commission of Lincoln County. All of these actions

occurred prior to the Court of Appeals memorandum opinion disposing of the second appeal. In fact, the actions occurred between 1989 and 1992 with no further follow-up after May 1992. The mandates from this Court contemplated subsequent action by Wimberly. In 1993 the district court ordered appropriate subsequent action. Wimberly neither appealed nor sought clarification. In fact, the district court gave Wimberly an option to meet with the County Clerk to set up a plan for compliance with the order in lieu of presenting the completed plat, and Wimberly did not arrange for a meeting. That fact alone defeats Wimberly's claim that he did everything within his means to comply with the order. Under these circumstances, the district court did not err in refusing to find sufficient compliance to quash the order, which is the gist of the challenged finding.

█ Next, Wimberly argues that he is not in contempt of the judgment on mandate because he is financially unable to comply. *See Dial,* 103 N.M. at 137, 703 P.2d at 914 (inability to pay is a defense to a contempt proceeding). In *Dial,* the only evidence that the defendant presented to prove his inability to pay was his affidavit attached to a motion requesting that his testimony be taken by telephone because of " 'severe financial and business considerations.' " *Id.* at 137–38, 703 P.2d at 914–15; *see Nelson v. Nelson,* 82 N.M. 324, 327, 481 P.2d 403, 406 (1971). Based on this evidence, we held that the defendant failed to prove an inability to pay. In this case, Wimberly was afforded an opportunity to meet his burden at the hearing on the order to show cause. He proffered his uncontroverted testimony that filing a certified plat would cost between $50,000 and $75,000, a $975,000 personal judgment is pending against him, his business interests have a negative net worth, and he could not borrow any money. However, he also testified that he owns four companies, one of which is the parent company and owner of the condominiums where he and his wife live and are salaried managers. He did not present any testimony regarding his personal cash flow, earnings versus liabilities, and the equity of his corporations. Furthermore, the record is void of any suggestion that Wimberly tried to borrow money or that he even tried to get a plat. Based on Wimberly's

unsubstantiated testimony, the district court did not abuse its discretion. *See Nelson,* 82 N.M. at 327, 481 P.2d at 406 ("[i]nasmuch as [the defendant] carried the burden of proof, the court's refusal to find his inability to pay is deemed an adverse finding on that issue.").

## CONCLUSION

We hold that the district court did not err in finding Wimberly in contempt of court and did not exceed its jurisdiction. We also hold that the automatic stay applicable to proceedings against Alto does not apply to this contempt proceeding against Wimberly. For the foregoing reasons, we affirm the order of the district court.

IT IS SO ORDERED.

BLACK and BOSSON, JJ., concur.