**In re Robert C. GOODWIN, Debtor.**

**Bankruptcy No. 93–02080–7.**

United States Bankruptcy Court,
D. Idaho.

Dec. 22, 1993.

D. Blair Clark, Ringert Clark Chartered, Boise, ID, for debtor.

Douglas M. Conde, Deputy Atty. Gen., Office of the Atty. Gen., State of Idaho, for Idaho Dept. of Health & Welfare.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

The Idaho Department of Health and Welfare ("Department") has moved to clarify the application of the automatic stay in this chapter 7 case. The Department asserts the automatic stay does not prohibit it from obtaining an injunction against Robert Goodwin, the debtor requiring a clean-up of environmental contamination. The debtor opposes the motion.

### FACTS

This dispute arose from the debtor's ownership of an automobile service station.[1] Debtor purchased the station from its original owners in 1988, with legal title to remain in the hands of the original owners until the full purchase price was paid. In December, 1989, the debtor hired a business to perform tests on the underground storage tanks at the station. The tests showed one of the tanks was leaking. The debtor commissioned the business to remove the tank. On removal, it was discovered that the underside of the tank was corroded, and had approximately 20–30 holes; the largest was about the size of a golf ball. The pit from which the tank was removed contained groundwater, which appeared contaminated by petroleum. The soil was also determined to be contaminated by petroleum.

On September 16, 1992, the Department filed an action in state court against the debtor, the original owners, and the debtor's former wife. This action sought the following relief: (1) an award of all costs incurred by the Department in responding to the contamination; (2) a permanent mandatory injunction requiring the defendants to clean-up and abate the contamination; (3) as an alternative to the injunction, an award of damages equal to the cost required to clean-up or abate the contamination; (4) civil penalties of up to $10,000 per violation and $1,000 per day for each day of a continuing violation of environmental statutes, whichever was greater; and (5) attorney's fees and prejudgment interest.

The Department filed a motion for summary judgment in the state court action on June 24, 1993. On July 16, 1993, the debtor

---

1. The following discussion of facts is based upon the findings of the state court proceeding discussed below.

filed for protection under Chapter 7 of the Bankruptcy Code. The Hon. Wayne P. Fuller, District Judge for the Third Judicial District of the State of Idaho, granted in part the Department's motion for summary judgment on July 30, 1993. Judge Fuller had been informed of the chapter 7 filing, and because of the automatic stay declined to enter any order for relief against the debtor.

The debtor apparently no longer has any interest in the property. Canyon County issued a tax deed and notice to surrender in March, 1993. No interest in the property is listed in the debtor's schedules. The debtor received a discharge under Chapter 7 on October 26, 1993, after the present motion was filed.

## DISCUSSION

■ There has been much confusion regarding the application of the automatic stay to environmental clean-up actions. For this reason, it is important to review the relevant provisions of the section 362. Under that section, the filing of a bankruptcy petition acts as a stay of:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

\* \* \* \* \* \*

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; ....

11 U.S.C. § 362(a)(1), (2), (6). The statute also creates numerous exceptions to the stay. The bankruptcy petition

does not operate as a stay—

\* \* \* \* \* \*

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; ....

11 U.S.C. § 362(b)(4), (5). "Exceptions to the automatic stay should be read narrowly." *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n,* 997 F.2d 581, 590 (9th Cir. 1993). Courts will examine the substance of an action, and not its form, to determine whether the action is stayed under subsection (a), or entitled to an exception to the automatic stay under subsection (b). *See Hucke v. Oregon,* 992 F.2d 950, 953 (9th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 178, 126 L.Ed.2d 137 (1993).[2]

---

**2.** In *Hucke,* the debtor obtained a plea bargain in a criminal case under which he received probation on the express condition that he pay a $20,-000 compensatory fine to his victim. The debtor subsequently filed a petition under Chapter 13. The state court held a hearing and revoked the debtor's probation, sentencing him to 36 months imprisonment. In considering whether the state court's action violated the automatic stay, the Ninth Circuit noted that criminal proceedings are exempt from the stay under section 362(b)(1). The court then stated:

[I]f the probation hearing had as its aim the collection of the fine, then it would run afoul of

§ 362(a)(6), which stays acts intended to "collect, assess or recover a claim" against the debtor. In sum, if the present state revocation proceeding constituted collection efforts, then it would violate the automatic stay and would be void. On the other hand, if that proceeding were not a collection effort, then it would be a "continuation of a criminal action or proceeding against a debtor" and exempt from the stay.

992 F.2d at 953. The Ninth Circuit found the debtor's probation was not revoked for the purpose of collecting the compensatory fine. 992 F.2d at 954.

## I. Subsection (b)(5) Exception is Not Applicable.

■ The Department contends that, because it seeks only an injunction, it is not seeking a monetary judgment and therefore falls within the exception of subsection (b)(5). This misreads the statute. Subsection (b)(5) is an exception only to the automatic stay implemented by subsection (a)(2). 11 U.S.C. § 362(b)(5); *Hillis*, 997 F.2d at 591. Subsection (a)(2) only prohibits enforcement "of a judgment obtained before the commencement of the case under this title." The Department did not obtain a judgment against the debtor before the debtor filed his bankruptcy petition. The Department's actions are not stayed by subsection (a)(2); to the extent the Department is stayed, it is stayed under one or more of the other provisions of subsection (a). The exception of subsection (b)(5) has no effect on a stay imposed by these other provisions of subsection (a). In other words, subsection (b)(5) has no application to this case. *Hillis*, 997 F.2d at 591 & n. 17 (state action to dissolve debtor corporation occurred postpetition, and therefore was not stayed under subsection (a)(2) or exempt under subsection (b)(5)). *See* Kathryn R. Heidt, *The Automatic Stay in Environmental Bankruptcies*, 67 Am.Bankr.L.J. 69, 102 (1993).

## II. Subsection (b)(4) Acts as an Exception to the Stay of Subsection (a)(1).

■ Two other provisions of section 362 may stay the Department from seeking the requested injunction. The first is subsection (a)(1), prohibiting the commencement or continuation of a judicial proceeding that could have been commenced prepetition. Subsection (b)(4) excepts from the stay of subsection (a)(1) the commencement or continuation of an action to enforce a governmental unit's police or regulatory power. Here, the Department seeks to eliminate a hazardous environmental condition. "No more obvious exercise of the State's power to protect the health, safety, and welfare of the public can be imagined." *Penn Terra Ltd. v. Dep't of Environmental Resources*, 733 F.2d 267, 274 (3d Cir.1984).[3] The Department is clearly a "governmental unit." 11 U.S.C. § 101(27) ("governmental unit" means "department, agency, or instrumentality of ... a State"). While the Department's actions in seeking an injunction are within the scope of subsection (a)(1), the Department appears to be excepted from that stay under subsection (b)(4).

This does not conclude the analysis. Subsection (b)(4) only acts as an exception to acts stayed by subsection (a)(1). 11 U.S.C. § 362(b)(4); *Hillis*, 997 F.2d at 591.

> [T]he precise wording of the stay and its exceptions should be emphasized and the fact that an exception to the stay of section 362(a)(1) may let an action continue does not mean that by reason of such action a different paragraph of subsection (a) may be violated without the consent of the court.

2 Lawrence P. King, *Collier on Bankruptcy* ¶ 362.04[1], at 362–36 (15th ed. 1993); *see also Hillis*, 997 F.2d at 590–91. The Department's proposed actions may fall within one of the other provisions of subsection (a). In that event, the "police or regulatory powers" exception of subsection (b)(4) will not apply, and the Department will be subject to the automatic stay of the other subsection. The relation between subsections (a)(1) and (b)(4) which represent a direct application of the unit's police or regulatory powers. The former are stayed under 11 U.S.C. § 362(a)(1); the latter are not." *Thomassen*, 15 B.R. at 909.

As discussed below, the Department has a completely adequate alternative to enforcement of an injunction, by cleaning up the property itself and seeking reimbursement. While the decision that the property requires a clean-up was an exercise of the police or regulatory power, the choice of an injunction rather than reimbursement was primarily for the purpose of protecting the Department's pecuniary interest.

---

3. There is substantial reason to question whether the Department is in fact exercising its police or regulatory powers in this case. In this circuit, courts utilize a "pecuniary purpose" test to determine whether the actions of a governmental agency are within the police or regulatory powers. *Thomassen v. Div. of Medical Quality Assurance (In re Thomassen)*, 15 B.R. 907, 909 (9th Cir.B.A.P.1981); *see also Hillis*, 997 F.2d at 591 (suggesting Ninth Circuit has adopted the "pecuniary purpose" test). This test draws "a distinction between governmental actions which are aimed at obtaining a pecuniary advantage for the unit in question or its citizens, and those actions

is thus similar to the relation between subsections (a)(2) and (b)(5) discussed above.

### III. *Subsection (a)(6) Prohibits the Requested Injunction.*

The final subsection of 362(a) that may apply to this case is subsection (a)(6). This subsection prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). "The wording of paragraph (6) is somewhat similar to that of paragraph (1) but applies to any 'act' whether or not that act is related to a 'proceeding.'" 2 *Collier* ¶ 362.04[6], at 362–43. Section 362(a)(1) "interacts with section 362(a)(6), which also covers assessment, to prevent harassment of the debtor with respect to prepetition claims." 124 Cong.Rec. H11092 (daily ed. Sept. 28, 1978); S17409 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini). "Subsection 362(a)(6) uses very broad language and courts generally construe the automatic stay provisions broadly." *Morgan Guaranty Trust Co. v. American Savings and Loan Ass'n,* 804 F.2d 1487, 1491 (9th Cir.1986), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987).

■ There are three requirements for this subsection to apply: (1) there must be a "claim;" (2) the claim must have arisen prepetition; and (3) the action must be an attempt to collect, assess, or recover that claim. 11 U.S.C. § 362(a)(6).

### A. The Requested Injunction is a "Claim."

■ The first requirement for application of subsection (a)(6) is that there must be a "claim." In the complaint filed in state court, the Department sought either a permanent mandatory injunction requiring the debtor to perform a clean-up of the contamination, or in the alternative damages equal to the cost of the clean-up. *See* I.C. §§ 39–108(6), (8).[4] The Department currently represents it "will seek only an order requiring [the debtor] to do the investigation and cleanup activities required of him by state law." Memorandum in Support of Idaho Department of Health and Welfare's Motion to Clarify Applicability of Automatic Stay, at 9 (filed October 4, 1993).

It is the existence of the alternative right to seek damages that is key to the disposition of this case. Section 101 of the Bankruptcy Code defines a "claim" as a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; . . . ." 11 U.S.C. § 101(5)(B). As the Supreme Court noted:

"Section 101([5])(B) . . . is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11."

*Ohio v. Kovacs,* 469 U.S. 274, 280, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985) (quoting 124 Cong.Rec. 32393 (1978) (remarks of Rep. Ed-

---

4. Section 39–108 provides in part:

 6. In addition to such civil penalties, any person who has been determined to have violated the provisions of this act or the rules, regulations, permits or orders promulgated thereunder, shall be liable for any expense incurred by the state in enforcing the act, or in enforcing or terminating any nuisance, source of environmental degradation, cause of sickness, or health hazard.

 \* \* \* \* \* \*

 8. In addition to, and notwithstanding other provisions of this act, in circumstances of emergency creating conditions of imminent and substantial danger to the public health or environment, the prosecuting attorney or the attorney general may institute a civil action for an immediate injunction to halt any discharge, emission or other activity in violation of provisions of this act or rules, regulations, permits and orders promulgated thereunder. In such action the court may issue an ex parte restraining order.

I.C. § 39–108(6), (8).

wards); *see also id.*, at 33992 (remarks of Sen. DeConcini)).

In *Kovacs,* the debtor was the chief executive officer of one corporation that operated a hazardous waste disposal site. The state of Ohio sued the debtor, the corporation, and others for violation of state environmental laws. The debtor, both in his individual capacity and on behalf of the corporation, entered into a stipulation and judgment enjoining the defendants from causing further pollution and requiring the defendants to remove specified wastes from the property, among other things. The debtor and the other defendants failed to comply with the injunction, and the state obtained the appointment of a receiver. After the receiver took possession of the property, the debtor filed a petition for relief in bankruptcy. The issue before the Supreme Court was whether the affirmative obligations to clean up the property were a "claim" dischargeable in bankruptcy. The Court found the obligation was a claim that was discharged. 469 U.S. at 283, 105 S.Ct. at 710.

The Department is entitled to an equitable remedy for breach of performance (an injunction for breach of the environmental regulations), and such breach may also be satisfied by a right to payment (reimbursement of the Department for the costs of clean-up if the Department performs the clean-up). The fact the equitable remedy does not arise out of a contract is irrelevant. *Kovacs,* 469 U.S. at 279, 105 S.Ct. at 707–708. As in *Kovacs,* the debtor in this case apparently no longer possesses the property.[5] It is therefore concluded the Department's right of action against the debtor is a "claim" under the Bankruptcy Code. *See Kovacs,* 469 U.S. at 283, 105 S.Ct. at 710.

This conclusion is supported by the Ninth Circuit's recent decision in *Calif. Dep't of Health Services v. Jensen (In re Jensen),* 995 F.2d 925 (9th Cir.1993). That case, involving violations of California's Carpenter–Presley–Tanner Hazardous Substance Account Act, Cal.Health & Safety Code §§ 25300–25395, concerned when a "claim" would be consid-

ered to arise. The Ninth Circuit utilized a "fair contemplation of the parties" test. The court stated:

> The sometimes competing policy goals of environmental law and the bankruptcy code were carefully balanced by Judge Barefoot Sanders in *In re National Gypsum [Co.],* 139 B.R. [397], at 409 [ (N.D.Tex.1992) ]. What might be called the "fair contemplation" test provides that "all future response and natural resource damages cost based on pre-petition conduct that can be fairly contemplated by the parties at the time of [d]ebtors' bankruptcy are claims under the [Bankruptcy] Code." *Id.* This approach stems from the belief that
>
> > [t]he only meaningful distinction that can be made regarding CERCLA claims in bankruptcy is one that distinguishes between costs associated with pre-petition conduct resulting in a release or threat of release that could have been "fairly" contemplated by the parties; and those that could not have been "fairly" contemplated by the parties.
>
> *Id.* at 407–08.
>
> *In re National Gypsum* spells out certain indicia of fair contemplation ("knowledge by the parties of a site in which a PRP may be liable, NPL ['National Priorities List'] listing, notification by EPA of PRP liability, commencement of investigation and cleanup activities, and incurrence of response costs," *id.* at 408), and emphasizes that it is "not meant to encourage or permit dilatory tactics on the part of EPA or any other relevant government agency." *Id.*

*Jensen,* 995 F.2d at 928 (alterations other than to citation in original). This standard accurately reflects the broad nature of a "claim" as defined in the Bankruptcy Code. 995 F.2d at 929–30.

In finding that " 'all future response and natural resource damages cost based on pre-petition conduct that can be fairly contemplated by the parties at the time of [d]ebtors'

---

**5.** The debtor's lack of control over the contaminated property casts doubt on his ability to per-

form even if an injunction was obtained.

bankruptcy are claims under the [Bankruptcy] Code,'" the Ninth Circuit recognized that a "claim" was created upon the discovery of the contamination, such claim bounded only by the extent to which the scope of the contamination is known. At that point in time, the environmental agency has made no decision regarding the manner in which it will seek enforcement. In *Jensen*, the California Department of Health Services performed the clean-up and sought reimbursement, whereas here the Department seeks affirmative injunctive relief requiring the debtor to perform the clean-up. In order to find that the present case does not involve a "claim," this Court would have to find that the decision of a state agency to seek affirmative injunctive relief instead of reimbursement transformed the dischargeable "claim" into a nondischargeable obligation. Such a result is inconsistent with both the Ninth Circuit's holding in *Jensen*, and with the definition of "claim."

The remedies available to the Department also confirm the Court's conclusion. The Department has two interests at stake in the present litigation: (1) removing the environmental contamination, and (2) placing the burden for that removal on the debtor as the responsible party. The requested injunction is not the only means available to the Department to protect the public health, safety, and welfare; the Department may seek reimbursement for the cost of performing the clean-up itself. The government's interest in protecting the public against environmental contamination is served regardless of which alternative is chosen. If the Department performs the clean-up itself, however, it must go through the process of collecting reimbursement from the debtor. This may be impossible, either because the debtor has no assets or because the debtor obtains a discharge in bankruptcy. The choice to seek an injunction rather than perform the clean-up itself is not motivated by a concern over public welfare; it is motivated by the desire to make sure the debtor, rather than the state, bears the financial burden of the clean-up. The requested injunction is nothing more than an attempt to collect a debt from the debtor, and as such *directly contradicts* the purpose for the discharge provided by

the Bankruptcy Code. *See Hucke,* 992 F.2d at 953 (if probation hearing's aim was collection of compensatory fine, hearing was stayed under section 362(a)(6)).

The Department's requested injunction does not require the debtor himself to perform the clean-up. It merely holds the debtor responsible to see that the clean-up is performed. In other words, the Department does not care whether the debtor performs the clean-up personally, or hires a company to perform the clean-up on his behalf. Performance by paying another to clean-up the property is indistinguishable from performance by paying the Department to clean-up the property. In turn, paying the Department to perform the clean-up is indistinguishable from reimbursing the Department for the cost of the clean-up. The equitable right to an injunction cannot be distinguished from the equally available right to money damages; the injunction provides no additional relief for which money damages are an inadequate substitute. The Bankruptcy Code's definition of "claim" encompasses such a situation.

### 1. The *Chateaugay* Decision.

One of the most recent cases addressing the question of whether an environmental agency's injunction is a "claim" is *United States v. The LTV Corp. (In re Chateaugay Corp.),* 944 F.2d 997 (2d Cir.1991). While that court dealt with the distinguishable situation of a Chapter 11 debtor-in-possession, the terms of the holding need to be addressed. *Chateaugay* began with the premise that an injunction requiring the clean-up of a "toxic waste site from which hazardous substances are leaching into nearby water supplies" may have two aspects: the one requiring the debtor to stop polluting (by stopping the runoff of waste), and the other requiring the debtor to clean up already deposited waste. 944 F.2d at 1007. The court then held:

> It is true that, if in lieu of such an order, EPA had undertaken the removal itself and sued for the response costs, its action would have both removed the accumulated waste and prevented continued pollution. But it is only the first attribute of the

order that can be said to remedy a breach that gives rise to a right to payment. Since there is no option to accept payment in lieu of continued pollution, any order that to any extent ends or ameliorates continued pollution is not an order for breach of an obligation that gives rise to a right of payment and is for that reason not a "claim."

944 F.2d at 1008. The court additionally relied upon *Kovacs* and *Midlantic Nat'l Bank v. N.J. Dep't of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986),[6] in support of its conclusions.

I find *Chateaugay* unpersuasive for several reasons. First, that opinion fails to distinguish between the continuing effect of completed prepetition conduct and a continuing violation of environmental law. A single prepetition violation that continues to release pollution (1) is the product of the debtor's completed past actions, (2) will be a continuing problem without regard to the debtor's future operations or continued existence, and (3) may be corrected by a single clean-up of the property. In contrast, continuing dumping of hazardous waste (1) is the product of the debtor's present actions, (2) would not continue if the debtor ceased operations or no longer exists, and (3) cannot be corrected by a single clean-up of the property, since future dumpings will recontaminate the area. The rationale that a debtor cannot pay for the right to continue polluting applies to the case of continuing dumping of hazardous waste, but not to the case of runoff from a past dumping. One clean-up corrects a single deposit leaking hazardous waste; it does not even serve as a stop-gap measure for continued dumping.

Second, *Chateaugay* ignores the fact that there is but a single clean-up, which can be remedied for a single cost. The *Chateaugay* court conceded that it would be a claim if the environmental agency cleaned up the property and merely sought reimbursement. If money damages in the amount of the cost of clean-up makes the Department whole *after*

the Department has cleaned the property, it is a completely adequate substitute for injunctive performance. It is an equitable remedy for which there is a completely adequate alternative right to payment, and therefore is within the plain language of the definition of "claim."

Third, the *Chateaugay* holding places the definition of "claim" in the hands of the environmental agency. Under *Chateaugay*, the agency has a "claim" if it chooses to clean-up the property itself and seek reimbursement. Alternatively, the agency may request an injunction requiring the debtor to clean-up the past contamination as well as stop future contamination from those wastes; in that event, the obligation is not a claim, and not subject to discharge. There is no basis in the Bankruptcy Code for permitting a party to decide unilaterally whether it has a claim, particularly where this decision turns on the party's choice between forms of relief that each achieve the same result.

*Chateaugay's* reliance on *Kovacs* and *Midlantic* is also misplaced. The court stated:

We recognize that in the context of environmental remedies the line between "claim" injunctions and non-"claim" injunctions could arguably be drawn somewhat differently, for example, by placing on the non-"claim" side only those injunctions ordering a defendant to stop current activities that add to pollution (*e.g.*, depositing new hazardous substances), while leaving on the "claim" side all other injunctions, including those that direct the cleanup of sites from which hazardous substances, previously deposited, are currently contributing to pollution. But we believe that placing on the non-"claim" side all injunctions that seek to remedy on-going pollution is more faithful to the Supreme Court's teachings in both *Kovacs* and *Midlantic National Bank v. N.J. Dep't of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). It is difficult to understand how any injunction

---

**6.** In *Midlantic,* the Supreme Court addressed whether the trustee in a chapter 7 bankruptcy could abandon property under 11 U.S.C. § 554 where that property had been contaminated with hazardous waste prepetition. The Court found

that the estate could not abandon property in contravention of state or local law "without formulating conditions that will adequately protect the public's health and safety." 474 U.S. at 507, 106 S.Ct. at 762.

directing a property owner to remedy on-going pollution could be a dischargeable "claim" if, as *Kovacs* instructs, the owner "may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions." 469 U.S. at 285, 105 S.Ct. at 711. Moreover, leaving such injunctions outside the category of dischargeable "claims" is entirely consistent with *Midlantic's* holding that the Bankruptcy Code does not entitle a debtor to abandon property in violation of an environmental regulation "that is reasonably designed to protect the public health or safety from identified hazards." 474 U.S. at 507, 106 S.Ct. at 762 (footnote omitted). 944 F.2d at 1009. *Chateaugay* fails to note that the "property owner" does not remain the owner once bankruptcy is filed. On the filing of the petition, all property interests of the debtor become property of the estate. 11 U.S.C. § 541(a). Discharge of a claim against the debtor/property owner does not relieve the *estate* of its duty not to maintain a health hazard. The power to abandon property of the estate rests with the trustee or debtor-in-possession, not the debtor. In sum, the language cited from *Kovacs* and the holding of *Midlantic* deal with postpetition estate administration, not the dischargeability of prepetition claims. The restrictions on estate operation recognized by the Supreme Court have no relevance to whether the environmental agency has a "claim" against the debtor. Indeed, the consequence of this Court's finding that the Department has a claim confirms that the debtor's estate is liable for the damage to the environment. *See Kovacs*, 469 U.S. at 286, 105 S.Ct. at 711 (O'Connor, J., concurring) ("The Court's holding that the cleanup order was a 'claim' within the meaning of § 101([5]) also avoids potentially adverse consequences for a State's enforcement of its order when the debtor is a corporation rather than an individual," because in the absence of a claim the state cannot recover through the bankruptcy, and a corporation may dissolve afterwards).

It is emphasized that this case does not involve a *debtor* attempting to continue dumping hazardous materials under the protection of bankruptcy. The violation in question was a single event discovered nearly four years ago. The debtor does not retain possession of the property, and the Department has a fully adequate right to payment in lieu of the right to an injunction. Different facts may command a different result.

**B. The Department's Claim Arose Prepetition.**

The second requirement for the stay of subsection (a)(6) to apply is that the claim must have arisen prepetition. As previously noted, the Ninth Circuit recently articulated the standard for determining when a claim for environmental violations is held to have arisen. *Jensen*, 995 F.2d at 925 *et seq.* The court approved the "fair contemplation" test, providing that " 'all future response and natural resource damages cost based on prepetition conduct that can be fairly contemplated by the parties at the time of [d]ebtors' bankruptcy are claims under the [Bankruptcy] Code.' " 995 F.2d at 928 (quoting *In re National Gypsum Co.*, 139 B.R. 397, 409 (N.D.Tex.1992)).

■ In the present case, as was the case for the state agency in *Jensen*, the Department knew of the contamination prepetition. Unlike *Jensen*, the Department's knowledge of the contamination was actual, not constructive, and the Department was able to file suit against the debtor prepetition. *Cf.* 995 F.2d at 931 (knowledge of California Regional Water Quality Control Board imputed to California Department of Health Services). Because the Department was aware of the contamination and its scope prepetition, its claim against the debtor arose prepetition.

**C. Judicial Proceedings to Obtain the Requested Injunction Are Acts to Collect, Assess, or Recover the Department's Claim.**

■ The last requirement for application of the section 362(a)(6) stay is that the party engage in an act to collect, assess, or recover on its prepetition claim. The fact that the Department seeks merely an injunction rather than monetary damages does not alter the fact that proceedings to obtain the injunction are acts to collect, assess, or re-

cover the claim. As previously noted, "claim" includes any right to an equitable remedy for breach of performance, if that right would also give rise to an alternative remedy of monetary damages. *See* discussion *supra.* Since the right to injunctive relief is a "claim," actions taken to obtain the injunction are acts to collect, assess, or recover on the claim. Actions to obtain the injunction would also serve to settle the question of the debtor's liability to reimburse the Department if the Department performs the clean-up itself.

D. The Requested Injunction Would Violate the Debtor's Right to a Discharge.

 As a "claim," the Department's rights against the debtor are subject to discharge in bankruptcy. *Kovacs,* 469 U.S. at 282–83, 105 S.Ct. at 709–10; *Jensen,* 995 F.2d at 931. An objection to discharge must be raised in the form of an adversary proceeding. F.R.B.P. 7001(4). Permitting the Department to obtain an injunction in this case would, in effect, deny the debtor a discharge. As one commentator has noted:

If an individual debtor must use future earnings to restore the property in accordance with the order, the debtor has not been discharged of the obligation. In effect, a court which allows a government to pursue a debtor on the obligation transforms an automatic stay issue into a discharge issue without recognizing it as such.

*See* Heidt, 67 Am.Bankr.L.J. at 118. The Department has not sought an order denying the debtor a discharge, nor has it suggested the basis for such an order. The requested injunction is a "claim," and any attempt to enforce it after discharge would be automatically enjoined. *See* 11 U.S.C. § 524(a)(2).

E. Precedent Cited by the Department is Distinguishable or Unpersuasive.

The Department relies upon numerous decisions in support of its contention the automatic stay does not apply to the requested injunction. Several decisions cited by the Department have relied on subsection (b)(5) (permitting enforcement of a judgment obtained through police or regulatory power, except a monetary judgment) in holding injunctive or other relief was not stayed under subsection 362. These decisions address neither the limited application of subsection (b)(5) nor the question of whether another subsection of section 362(a) acts to stay the proceedings. Whether this omission was because the issue was not involved or because the parties never presented it, the omission renders these decisions distinguishable. *See Word v. Commerce Oil Co. (In re Commerce Oil Co.),* 847 F.2d 291, 295 (6th Cir.1988) (case additionally distinguishable as involving a Chapter 11 debtor-in-possession); *Commonwealth Oil Refining Co., Inc. v. United States (In re Commonwealth Oil Refining Co., Inc.),* 805 F.2d 1175, 1182–84 (5th Cir. 1986), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987) (case additionally distinguishable as involving a Chapter 11 debtor-in-possession); *Penn Terra,* 733 F.2d at 267 *et seq.* Similarly, *City of New York v. Exxon Corp.,* 932 F.2d 1020 (2d Cir.1991) is also distinguishable; the case involved a Chapter 11 debtor-in-possession, and the court relied upon the exception of subsection (b)(4) without considering whether a subsection other than (a)(1) might stay the proceedings. 932 F.2d at 1023–24. To the extent these cases may suggest the clear language of the statute should be ignored, they are unpersuasive.

## CONCLUSION

The Department's motion to find the automatic stay inapplicable to an injunction under state environmental law will be denied.

IT IS SO ORDERED.