1998-NMSC-024

964 P.2d 93

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Albert J. RIVERA, Real Party
in Interest–Appellant.**

No. 24914.

Supreme Court of New Mexico.

Aug. 10, 1998.

Law Offices of Steven K. Sanders, Steven K. Sanders, Albuquerque, for Appellant.

Tom Udall, Attorney General, M. Anne Kelly, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

## OPINION

MINZNER, Justice.

{1} The district court assessed costs in the amount of $1762.12 against Appellant Albert J. Rivera, a criminal defense attorney, following Rivera's withdrawal of a motion to suppress shortly before a scheduled hearing on the motion. The Court of Appeals certified this case to this Court pursuant to NMSA 1978, § 34–5–14(C) (1966). We reverse.

### I.

{2} Rivera represented a defendant charged with controlled substances laws violations. Rivera filed a motion to suppress evidence seized at a border patrol stop, and he requested an evidentiary hearing on the motion. On three occasions, he asked the court to continue the evidentiary hearing; the court granted each request and fixed the third setting for November 14, 1996.

{3} In order to respond to the defendant's anticipated showing, the State decided to present testimony of a border patrol agent, who lived in South Carolina at the time of the scheduled hearing. In addition, Rivera filed a motion requesting an interpreter for his client for the hearing; this motion was granted. On the morning of the hearing, however, Rivera filed a notice withdrawing the motion to suppress. Because Rivera filed the notice on the same day the evidentiary hearing was scheduled, the wit-

ness and the interpreter had already traveled to Alamogordo, incurring the anticipated costs.

{4} The trial took place on November 15, 1996. The jury found the defendant not guilty on one count but could not agree on the second count. On November 21, 1996, the State filed a motion for costs, asking the district court to require that Rivera pay the costs incurred in bringing the border patrol agent to New Mexico, and the interpreter's fees for that day. The total amounted to $1762.12. At a hearing on the motion, an appointed special prosecutor for the State argued that the district attorney's office should not have to pay costs that defense counsel's negligence caused. The prosecutor reasoned that defense counsel had caused the costs and that the Administrative Office of the Courts (AOC) would not reimburse the district attorney for witness or interpreter fees. The special prosecutor relied on guidelines that the AOC published:

The person or agency that calls the witness shall be responsible for notifying the witness of trial cancellations, continuances, resettings or settlements. If that person or agency fails to notify the witness, that person or agency shall be responsible for the per diem and mileage expenses of the witness; under those circumstances, AOC will not pay for the witness. In determining payment responsibility under this subsection, the one who called the witness must show he was unable to contact the witness despite good faith efforts to do so, and a sworn statement to that effect must accompany the request for payment.

*Witness Fee Payment Guidelines,* § III(E), Administrative Office of the Courts, Supreme Court of New Mexico (revised and effective May 1, 1994); *accord Interpreter Fee Payment Guidelines,* § VII, Administrative Office of the Courts, Supreme Court of New Mexico (effective September 1, 1988; revised November 7, 1994).

{5} The district court agreed, finding that the State incurred costs as a result of Rivera's breach of duty. Even though the State intended to call the border patrol agent, the court found that "[t]he actions of the Defense were the proximate cause of the unnecessary expenditure of fees for an out of state witness." The court found that the Office of the District Court Clerk of the Twelfth Judicial District was "the agency that requested the interpreter" as that term is used in the Interpreter Fee Payment Guidelines. The court held Rivera personally responsible for the witness and interpreter fees, relying on the AOC guidelines.

## II.

{6} The Legislature has provided statutory authority for assessing costs against defendants in a criminal case: "In every case wherein there is a conviction, the costs may be adjudged against the defendant." NMSA 1978, § 31–12–6 (1972). However, statutes such as this one are to be construed narrowly. "[A]ssessment of costs in criminal cases, unknown at criminal law, requires statutory authority . . . and statutes authorizing costs in criminal cases, being penal in nature, are to be strictly construed." *State v. Valley Villa Nursing Ctr., Inc.,* 97 N.M. 161, 162, 637 P.2d 843, 844 (Ct.App. 1981).

{7} In this case, Rivera's client could not be assessed costs for trial because the jury acquitted him on one charge and could not reach a verdict on the other. Furthermore, a strict construction of the term "the defendant" would exclude requiring a defendant's counsel to pay costs under Section 31–12–6. For the reasons that follow, including the terms of the statute, we hold that the trial court erred in requiring Rivera to pay the costs at issue.

### A.

{8} An attorney may be held in contempt of court for failing to observe the rules of this Court. Rule 5–112 NMRA 1998. However, the trial court in this case made no such finding. The State argues that this Court should hold that the trial court implicitly held Rivera in civil contempt of court. We address the State's argument but hold that it does not provide a basis for affirming the trial court.

{9} Although the State concedes that no order was in place, it argues that the trial

court had and exercised its inherent contempt powers. The State notes that in *State v. Wisniewski*, 103 N.M. 430, 434, 708 P.2d 1031, 1035 (1985), this Court held that the trial court's contempt power is not limited to willful noncompliance with the rules of criminal procedure or to intentional acts. The State argues that the district court's order is valid "as a finding of indirect .civil contempt for failure to follow the AOC guidelines and the general failure to limit unnecessary expense to the State." Although the State attempts to characterize the district court's action as indirect civil contempt, we recognize that, depending upon whether the district court's motive was punitive or remedial, its action could be characterized as indirect criminal contempt. *See Rhinehart v. Nowlin*, 111 N.M. 319, 326, 805 P.2d 88, 95 (Ct. App.1990). However, because we believe the distinction between the two forms of contempt is not relevant for purposes of resolving this case, we retain the State's nomenclature in reference to the district court's action.

{10} The State has identified an apparent conflict in New Mexico case law. In *Wisniewski*, this Court indicated that neither wilfulness nor intent was a requirement for the trial court's exercise of its contempt power. This Court specifically held "that the district court did not err in issuing contempt citations to all four respondents on the basis of their negligent failure to disclose information required by [court rule] and the district court's discovery order." *Wisniewski*, 103 N.M. at 435, 708 P.2d at 1036 (1985). Further, this Court specifically overruled the holding of the Court of Appeals that "a negligent failure to comply with a court order which sets no specific time for compliance ... falls outside the scope of indirect criminal contempt." *State v. Jasper*, 103 N.M. 447, 452, 708 P.2d 1048,1053 (Ct.App.1984), *overruled in part by Wisniewski*, 103 N.M. at 435, 708 P.2d at 1036. Yet, we have required willful failure to comply or bad faith in order to justify the severest discovery sanctions in a civil case. *See United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155,

202, 629 P.2d 231, 278 (1980). "[W]illful failure [to comply] implies conscious or intentional failure, as distinguished from accidental or involuntary noncompliance." *Lopez v. Wal–Mart Stores, Inc.*, 108 N.M. 259, 261, 771 P.2d 192, 194 (Ct.App.1989).

{11} We believe the conflict is resolved by a close reading of *Wisniewski*, which supported the trial court's order as an exercise of its power to punish for indirect criminal contempt by identifying a violation of two duties. The first duty this Court identified was the prosecutor's duty to disclose evidence, a duty imposed by court rule and by due process. *Wisniewski*, 103 N.M. at 435, 708 P.2d at 1036. The second duty this Court identified was the duty imposed by a specific trial court order requiring production of certain materials requested by the defendant. *Id.* Neither factor is present in this case.

{12} The district court apparently believed that Rivera did not act as soon as he could to inform the court and opposing counsel that a scheduled hearing would not be necessary. No court rule or order indicated a particular time period within which Rivera was required to act, and the failure to convey a decision made as soon as it was made does not seem inherently contemptuous.[1] In this case, the facts support a conclusion that Rivera was negligent. He breached a general obligation to inform the court and opposing counsel as soon as possible that a scheduled hearing would not be necessary. We do not believe that is a sufficient basis for an order holding him in contempt. We do not believe this Court intended to say in *Wisniewski* that a negligent act in breach of a lawyer's general obligation as an officer of the court would support the exercise of a court's inherent power to punish for criminal contempt.

{13} Further, the Court of Appeals has recognized and resolved the particular conflict identified by the State that is relevant to this appeal. The Court of Appeals reasoned as follows:

1. The scheduled hearing was vacated; thus, there is no basis for holding Rivera in contempt for failure to appear.

Willfulness or intent, however, is not an element of a contempt action such as the one in this appeal. *See State v. Wisniewski*, 103 N.M. [at 434–35, 708 P.2d at 1035–36] (willfulness is not required to support a criminal contempt conviction); *In re Hooker*, 94 N.M. 798, 799, 617 P.2d 1313, 1314 (1980) (elements of civil contempt are knowledge of the court's order and an ability to comply). We recognize that some cases from this Court have stated that willfulness is an element of contempt, but in none of those cases has the issue been directly addressed (unlike *Wisniewski*), and it appears that the inclusion of intent as an element has been merely an oversight. *See, e.g., State ex rel. Udall v. Wimberly*, 118 N.M. 627, 631, 884 P.2d 518, 522 (Ct.App.1994) (reciting that the elements of contempt are knowledge of the order, ability to comply, and willful noncompliance); *Rhinehart v. Nowlin*, 111 N.M. [at 326, 805 P.2d at 95] (same). Following our Supreme Court's precedent in *Hooker* and *Wisniewski*, we hold that willfulness or intent is not an element of a civil contempt action.

*Spear v. McDermott (In re Megan S.)*, 121 N.M. 609, 619–20, 916 P.2d 228, 238–39 (Ct. App.1996). We agree with the Court of Appeals. Neither willfulness nor intent is an element of civil contempt. Therefore, we do not address further Rivera's argument that the trial court erred in punishing conduct not found willful. However, to hold a party in civil contempt, there must be evidence of knowledge of an order or knowledge of a duty imposed by court order or arising out of court rule. *Id.; Wisniewski*, 103 N.M. at 435, 708 P.2d at 1036. That evidence, as Rivera argues, was not presented in this case.

{14} We agree with the trial court that attorneys have a general duty to notify opponents and the court that motions will be withdrawn and hearings vacated. However, there is presently no rule mandating that such notification occur within a certain time period before the hearing. In addition, there was no specific order in this case requiring Rivera to notify the district attorney's office and the court in sufficient time to cancel the witness and the interpreter. Rivera could not violate a court order when one was not in place.

**B.**

{15} The Legislature has created a jury and witness fee fund, to be administered by the AOC.[2] NMSA 1978, § 34–9–11 (1994). "All balances may be expended only upon appropriation.... for the purpose of paying the costs of ... witnesses of fact or character subpoenaed by the court, the prosecution or the defense; ... [and] court interpreters." Section 34–9–11(B)(2), (4). In administering this fund, the AOC developed guidelines for payment of such fees. *See Witness Fee Payment Guidelines, supra; Interpreter Fee Payment Guidelines, supra. See generally In re Stailey*, 117 N.M. 199, 205, 870 P.2d 161, 167 (Ct.App.1994) (discussing the Supreme Court's orders adopting guidelines for the payment of court-appointed counsel and guardians ad litem). These guidelines "define responsibility for the payment of ... fees and.... provide direction for controlling ... costs." *Witness Fee Payment Guidelines, supra,* § I; *Interpreter Fee Payment Guidelines, supra,* § 1. The following reasons, however, persuade us that these guidelines control the AOC in acting upon the agency's request for reimbursement and do

---

2. In the 1993 legislative session, the New Mexico Legislature created the Jury and Witness Fee Fund. *See* 1993 N.M.Laws, ch. 106, § I(A). The fund appears as an item in the AOC's budget. *See, e.g.,* 1998 N.M.Laws, Ch. 117, § 5 (following the Supreme Court automation fund appropriation) and the Legislature appointed the AOC to manage the fund. However, the Jury/Witness Fee has appeared as an item in the judicial budget for many years prior to 1993. *See, e.g.,* 1979 N.M.Laws, ch. 404, § 4 (following the Supreme Court Building Commission and described as "Reporting/Recording and Jury/Wit-

ness Fund"). Part of the appropriation to that fund included monies to pay for court appointed attorneys not associated with the Mental Health and Developmental Disabilities Code. In creating the Jury and Witness Fee Fund, the Legislature thereby made that fund available initially solely for the costs of jurors, witnesses and court interpreters. *See* 1993 N.M.Laws, ch. 106, § 1(B). Fees for court-appointed attorneys now appear as a separate item in the judicial budget. *See, e.g.,* 1998 N.M.Laws, ch. 117, § 5 (preceding the municipal court automation fund).

not support the district court's order in this case.

{16} This Court may promulgate rules regulating practice and procedure. However, this Court must "cause all rules to be printed and distributed to all members of the bar of the state and to all applicants, and no rule shall become effective until thirty days after it has been so printed and distributed." NMSA 1978, § 38–1–1(B) (1966). This Court has not promulgated the guidelines set out by the AOC as rules.

{17} In addition, the guidelines do not provide for shifting costs between parties. Rather, they control the disbursement of the fund that the Legislature created. The AOC guidelines do not necessarily require the district attorney's office to pay the costs incurred in bringing the border patrol agent to New Mexico. Some ambiguity in the guidelines exists. Initially, it appears that the agency calling a witness *must* pay when it fails to notify the witness of a cancellation. However, the guidelines also indicate that the agency otherwise required to pay for a witness may show an *inability to notify the witness*, notwithstanding a good faith effort to do so. Thus, we are doubtful that the guidelines required the district attorney's office to pay the costs of bringing the border patrol agent to New Mexico, because the failure to notify that witness was not the fault of that office. Similarly, we are doubtful that the guidelines required the Twelfth Judicial District to pay the cost of the interpreter.

{18} We doubt that our guidelines should provide for shifting costs in a criminal case, absent an exercise of a court's inherent powers to punish for contempt when, as in this case, specific but limited statutory authority exists for doing so. *See* § 31–12–6 (providing for the assessment of costs against the defendant when there is a conviction). As we said in *Valley Villa Nursing Center*, courts derive their authority for assessing costs in a criminal case by statute. 97 N.M. at 162, 637 P.2d at 844; *see also Gooch v. State*, 685 N.E.2d 152 (Ind.Ct.App.1997) (finding the court has no power to assess costs against a criminal defendant absent statutory authority); *cf. Basham v. State*, 695 So.2d 887 (Fla.Dist.Ct.App.1997) (holding that failure of the trial court to cite to correct statute in assessing costs against criminal defendant requires reversal of assessment). Given the specific statute governing the assessment of costs in a criminal case, we would be reluctant to interpret the guidelines other than to discharge the AOC's responsibility to administer the fund. We do interpret the guidelines as controlling unnecessary expenditures by penalizing agencies for failure to timely notify witnesses of scheduling changes. However, we interpret the guidelines as penalizing agencies, rather than individuals, and as penalizing only those omissions that the agency cannot show were unavoidable.

{19} We conclude, therefore, that Rivera's failure to notify the witness and the interpreter of his decision to vacate the hearing does not make him responsible under the guidelines for the fees incurred in bringing both to the hearing. While we agree that Rivera could have withdrawn his motion earlier, thus giving the court and the district attorney's office more notice, we cannot say the guidelines required him to do so.

## C.

{20} Nevertheless, we suggest that the Supreme Court Committee for the Rules of Criminal Procedure review the issue of costs negligently incurred in a criminal case and make recommendations for any changes in those rules that seem appropriate. We do not intend in this case to express a preference or to recommend any change. However, this Court encourages efficient resolution of criminal matters. Therefore, the committee should consider the importance of encouraging attorneys to withdraw motions they realize are without merit, and balance this concern with the important aim of providing timely notice to parties of changes in the need for the court's resources. *Wisniewski* provides a basis for a trial court to exercise its contempt power to punish discovery violations in a criminal case. The committee may decide that other rule violations merit analogous treatment. If so, we trust the committee will suggest not only a specific rule but also an appropriate sanction. *Com-*

*pare* Rule 5–112 (authorizing exercise of contempt power and disciplinary action for an attorney's failure to observe district court criminal procedure, including prescribed time limitations), *with* Rule 5–505(B) NMRA 1998 (listing specific sanctions for failure to comply with continuing duty of disclosure). However, the committee may also decide that the facts in this case are not likely to recur. If so, we trust the committee will make a recommendation based on an assessment of the benefit of any rule change in light of the likely costs.

### III.

{21}   We hold that there is an insufficient basis to support the court's order as an exercise of indirect civil contempt. We also hold that no other authority exists for the trial court's assessment of costs against Rivera. We therefore reverse the district court's assessment of costs against Rivera.

{22}   **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, SERNA and McKINNON, JJ., concur.